The **PUBLIC LANDS INSTITUTE, INC.**
et al., Plaintiffs,

v.

Cecil D. **ANDRUS** et al., Defendants.

**Civ. A. Nos. 79–3329, 80–0555.**

United States District Court,
District of Columbia.

Sept. 19, 1980.

David T. Austern, Washington, D.C. (Robert E. Yuhnke, Chicago, Ill., of counsel), for plaintiffs.

Alfred T. Ghiorzi, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., for defendants.

## ORDER

HART, District Judge.

This cause has come on for hearing before this Court upon cross motions for Summary Judgment involving the effective date of the federal lands program for regulation of surface coal mining. Plaintiffs object to the December 31, 1979 regulation promulgated by the Secretary of the Interior (hereinafter, "December 31, 1979 Rule"), amending 30 C.F.R. § 701.11 and § 741.11, postponing operator compliance with the permanent program for regulation of surface coal mining on federal lands until approval of a state program or implementation of a federal program for a state. Defendants claim that this regulation is nei-

ther unreasonable, nor arbitrary or capricious.[1]

Congress enacted the Surface Mining Control and Reclamation Act of 1977 to provide for cooperative state and federal regulation of surface coal mining activities on federal and non–federal lands. The Surface Mining Control and Reclamation Act (hereinafter, "The Act") established a two tiered regulatory program to be implemented in distinct phases. First, an interim regulatory program was created to address the more serious environmental degradation and to provide for a smooth transition into the permanent program.[2] Specific regulations were promulgated on December 13, 1977, pursuant to Section 502 of The Act, 30 U.S.C. § 1252. 42 *Fed.Reg.* 62639, *et seq.* During the interim phase, the Secretary and the states share responsibility for enforcement of the regulatory program. According to Section 502(b) of The Act, states issue permits during this period which require compliance with the performance standards of Section 502(c). The Secretary implements a federal enforcement and inspection program in each state, pursuant to Section 502(e). The interim regulatory program will remain in effect in a particular state until that state has had its permanent program approved pursuant to Section 503 or a permanent federal program has been implemented pursuant to Section 504.

The second phase of the regulatory program–the permanent program–is provided for in Section 501(b) of The Act. That section requires the Secretary to promulgate regulations setting forth a "permanent regulatory program" which establishes procedures and requirements for preparation, submission, and approval of permanent state programs and for implementation of federal programs. These regulations are to include compliance with the full range of requirements of Title V, including all the performance standards set forth in Section 515 of The Act, not just those applicable to the interim program. The permanent program only becomes operative after a state program is approved under Section 503 (30 U.S.C. § 1253), or a federal program is promulgated, in lieu thereof, under Section 504 of The Act (30 U.S.C. § 1254).[3] On March 13, 1979, the Secretary, pursuant to Section 523 of The Act, promulgated the permanent phase of the federal lands program. 44 *Fed.Reg.* 15332. Thereafter, the State of Montana filed a petition with the Secretary recommending that the effective date for operator compliance with the permanent federal lands performance standards be postponed for all operations in states with approved, modified cooperative agreements until after the state program approval or implementation of a federal program for a state. Five additional states

1. Five states (Utah, Colorado, Montana, New Mexico, and North Dakota) support defendants' position through an amicus brief filed on July 7, 1980.

2. Under Section 501(a) of The Act, the Secretary was required to promulgate within 90 days of the enactment of the statute (by November 3, 1977), regulations establishing an interim regulatory program for surface coal mining and reclamation operations. These regulations establish environmental protection performance standards based on incorporating the provisions contained in Section 502(c) and any other provisions which The Act makes immediately effective. The interim performance standards required by The Act include, *inter alia,* requirements for restoration of land to its prior condition (Section 515(b)(2)), restoration of land to approximate original contour (Section 515(b)(3)), segregation and stabilization of topsoil (Section 515(b)(5)), minimizing disturbances to the hydrologic balance and to water

quality (Section 515(b)(10)), regulating the construction of coal mine waste piles used as dams or embankments (Section 515(b)(13)), regulation of the use of explosives (Section 515(b)(15)), revegetation of mined areas (Section 515(b)(19)), reclamation of mountaintop mines (Section 515(c)), and spoil disposal for steep–slope mines (Section 515(d)).

3. The Secretary is to prepare and implement a federal program within a state if that state fails to submit a proposed state program, fails to resubmit an acceptable state program within 60 days of disapproval of its proposed program, or at any time fails to implement, enforce, or maintain an approved program in accordance with The Act. Section 504(a). If a federal program is promulgated for a state, the Secretary becomes the regulatory authority–issuing permits, undertaking enforcement action, and otherwise administering the program until a state program is thereafter approved.

subsequently joined with Montana in petitioning for a postponement of the effective date for operator compliance. On September 28, 1979, the Office of Surface Mining published a notice proposing to amend the schedule for operator compliance with the permanent regulatory program on federal lands until approval of a state program or implementation of a federal program in lieu thereof. 44 *Fed.Reg.* 56272–275. After receiving and considering comments from the states, coal industry, and environmental groups, the Secretary decided to promulgate the current regulations on December 31, 1979, which postponed operator compliance with the permanent program on federal lands for all operations, including new operations, in all states until approval of a state program or implementation of a federal program for a state. The requirements of the initial interim regulatory program continue in effect. States with adequate regulatory programs existing on the date of enactment of The Act have been allowed to continue primary regulatory control of state lands under the interim program and joint state/federal regulation of federal lands pursuant to cooperative agreements between the states and the Secretary under Section 523(c) of The Act. 30 U.S.C. § 1273(c).

The submission and approval of state programs is "moving expeditiously." Oral Argument; September 18, 1980. State programs have already been approved for Wyoming, Montana, and North Dakota. Oral Argument; September 18, 1980. Colorado, Utah, and Arizona have all submitted programs that the Secretary is "actively reviewing." Oral Argument; September 18, 1980. These programs will cover almost all of the relevant coal producing land. The Secretary must complete his review of state programs by January 3, 1981. By July 3, 1981, all states must have a program approved under Section 503, or a federal program promulgated in lieu thereof under Section 504.

Plaintiffs are seeking to vacate the December 31, 1979 Rule and to obtain reinstatement of the regulations promulgated on March 13, 1979 (44 *Fed.Reg.* 15312, at 15322 and 15333).

This Court has considered the legal memoranda and arguments of counsel and the affidavits, exhibits, and pleadings submitted therewith. It appears to this Court that no genuine issue exists as to any material fact. It also appears to this Court as follows:

I. THE SECRETARY'S DECEMBER 31, 1979 RULE IS CONSISTENT WITH § 532(a) OF THE SURFACE MINING ACT, 30 U.S.C. § 1273(a), AS WELL AS WITH APPLICABLE RULES OF STATUTORY CONSTRUCTION.

Plaintiffs argue that the language of § 523(a), 30 U.S.C. § 1273(a), requires promulgation and implementation of a federal lands program "no later than one year after the date of enactment" of The Act. Therefore, plaintiffs maintain that the December 31, 1979 Rule which revokes that program until 60 days after the effective date of a state or federal program in any state, constitutes a failure to implement the federal lands program, and therefore a failure to perform a non–discretionary duty. It is clear, however, that the Secretary did not "fail to perform a mandatory duty" of implementing the federal lands program because, since Sections 523(a) and 523(c) of The Act are in conflict, The Act is ambiguous and the Secretary must use his discretion to resolve the conflict.

A court must give effect to every clause and part of an ambiguous statute. *Ginsberg & Sons, Inc. v. Popkin*, 285 U.S. 204, 52 S.Ct. 322, 76 L.Ed. 704 (1932); *Klein v. Republic Steel Corp.*, 435 F.2d 762 (3rd Cir. 1970). Statutory interpretation requires more than concentration upon isolated words. Rather, "consideration must be given to the total corpus ..." *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 250, 90 S.Ct. 1583, 1592, 26 L.Ed.2d 199 (1970).

The one year time frame for implementation of a federal lands program could not be satisfied for two reasons. First, a one year time frame is contradictory to the mandate of Section 523(a), which requires that "the federal lands program shall, at a minimum,

include the requirements of the approved state program." 30 U.S.C. § 1273(a). Since final state programs were not scheduled for approval until six months following implementation of the federal lands program, the Secretary could not possibly have complied with the "state inclusion" requirements of Section 523(a) if he promulgated a federal lands program within one year. Second, the one year implementation schedule also contradicts Section 523(c), 30 U.S.C. § 1273(c), by preempting state interim regulation on federal lands under state/federal cooperative agreements which were to remain in effect until approval of final state programs.

The December 31, 1979 Rule merely reconciles these statutory inconsistencies in favor of the states' opportunity to assume primary regulatory control over federal lands. The decision to slip back the "mandatory" time frame of the federal lands program is consistent with the slippage of other time frames of The Act.[4] The Secretary's delay of the time frame is, therefore, consistent with the purposes of the Surface Mining Act, as well as with applicable rules of statutory construction.

## II. THE SECRETARY'S DECEMBER 31, 1979 RULE IS REASONABLE, AND IS NEITHER ARBITRARY NOR CAPRICIOUS.

 In determining whether the Secretary's interpretation of Section 523 of The Act is reasonable, a reviewing court must give the Secretary's interpretation great deference. *Udall v. Tallman*, 380 U.S. 1, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965). This deference is particularly appropriate in the context of an agency interpreting a new and complex statute. *Train v. NDRC*, 421 U.S. 60, 87, 95 S.Ct. 1470, 1485, 43 L.Ed.2d 731 (1975). For three independent reasons, this Court finds that the Secretary's December 31, 1980 Rule is reasonable, and thus entitled to appropriate deference.

A. *The December 31, 1979 Rule is appropriate to maintain state primacy.* The Act notes in Section 101(f) that "the primary governmental responsibility for developing, issuing, and enforcing regulations for surface mining and reclamation operations subject to this [Act] should rest with the states." 30 U.S.C. § 1201(f). The March 13, 1979 regulations (44 *Fed.Reg.* 15312 *et seq.*) upset the legislative design for assumption of state primacy by requiring the implementation of a permanent federal program for control of surface mining activities on federal lands *prior* to submission and approval of state programs. This regulation would have required operations on federal lands to comply with a permanent federal program which did not reflect local conditions likely to be accommodated in a state program. Such requirements may have proven incompatible to the environment of the federal lands in question. The states justifiably feared that once operators changed their coal mining operations to meet federal program standards that the adoption of new or different state program requirements would be more costly or burdensome to achieve. Such a barrier to the implementation of state programs runs contrary to the Congressional intent of Section 101(f), 30 U.S.C. § 1201, requiring state primacy. Such would have also been contrary to Section 201(c)(9) which requires the Secretary to *assist* the states in development of programs to assume primacy. 30 U.S.C. § 1211(c)(9). Finally, the implementation under the March 13, 1979 regulations would have violated Section 523(a) insofar as it requires that the federal lands program "shall, at a minimum, include the requirements of the approved state program." 30 U.S.C. § 1273(a).

B. *The December 31, 1979 Rule is appropriate to accommodate local conditions.* Section 523(a) of The Act requires that the federal lands program accommodate the va-

---

4. The Secretary has relaxed "mandatory" time frames set by Section 501(a), 30 U.S.C. § 1251(a), by promulgating interim regulations which were mandated within three months of enactment and were not published until December 13, 1977. 42 *Fed.Reg.* 6239, *et seq.* In

*In re Permanent Surface Mining Regulation Litigation*, C.A. 79–1144 (D.C.D.C. July 25, 1979), Judge Flannery required extension of the "mandatory" time frame for submission and approval of state programs under Sections 503(a) and 504(a).

riety of local conditions on federal lands and to incorporate approved state programs. 30 U.S.C. § 1273(a). This "state window provision" allows states to propose regulatory alternatives to federal standards when necessary to accommodate local requirements or local environmental or agricultural conditions. If the March 13, 1979 regulations remained in effect, the regulatory program sensitive to the diversity of federal lands would be violated.

C. *The December 31, 1979 Rule is appropriate to accommodate state/federal cooperative agreements which were negotiated pursuant to Section 523(c) of The Act.* When the Secretary promulgated the permanent federal lands program regulations, Utah, New Mexico, North Dakota, and Montana objected to the rulemaking on the grounds that the program preempted interim state regulation under Section 523(c). 30 U.S.C. § 1273(c). Under the December 31, 1979 Rule, promulgation of a federal lands program is not appropriate until after approval of a permanent state program or adoption of a federal program for that state. Implementation of the federal lands program prior to this schedule violates Congressional intent under Section 523(c) with respect to the continuation of interim state regulation under state/federal cooperative agreements.

In short, after carefully considering public comments on the proposed postponement of the effective date for operator compliance on federal lands [5], the Secretary found that, at a minimum, the federal lands program must (1) incorporate all of the requirements of The Act, (2) take into consideration diverse physical and other characteristics of the federal lands, and (3) include the requirements of an approved state program. Further, the Secretary noted that these factors must be viewed in the context of other Congressional purposes, such as providing for (1) minimum national standards but not preempting more stringent state standards, (2) similar treatment of operators to assure that competition in commerce among sellers of coal will not be undermined, (3) cooperation between the states and the Secretary, (4) the orderly administration of a national program to regulate surface coal mining and reclamation operations, and (5) a smooth transition into the regulatory program. 44 *Fed.Reg.* 77441. In light of these factors, the Secretary postponed the effective date for operator compliance. In considering all of the circumstances, this Court finds that the Secretary's decision was reasonable and should be affirmed.

Thus, upon consideration of defendants' Motion for Summary Judgment, plaintiffs' Motion for Summary Judgment, the oppositions and replies thereto, oral argument, and the entire record in the case, it is by this Court this 19th day of September, 1980, hereby,

ORDERED, that defendants' Motion for Summary Judgment be, and the same hereby is, granted; and it is further,

ORDERED, that plaintiffs' Motion for Summary Judgment be, and the same hereby is, denied; and it is further,

ORDERED, that these actions are dismissed.

---

**5.** This was proposed by the Secretary on September 28, 1979. 44 *Fed.Reg.*